# In the United States District Court
# for the Southern District of Georgia
# Statesboro Division

JUANA EGDA PACHECO MENDOZA,

    Plaintiff/Petitioner,

v.

REY DAVID MORENO PASCUAL,

    Defendant/Respondent.

CV 615-40

## **PRELIMINARY INJUNCTION**

Petitioner Juana Egda Pacheco Mendoza alleges that her husband, Respondent Rey David Moreno Pascual, has wrongfully retained their minor child, L.D.M., in Statesboro, Georgia and will not return L.D.M. to her in Mexico per the parties' agreement. Presently before the Court is Petitioner's request for a preliminary injunction enjoining Respondent from removing L.D.M. from the Southern District of Georgia, Statesboro Division's jurisdiction pending the resolution of her Hague Convention Petition. Dkt. no. 8. This Court's findings of fact and conclusions of law, discussed below, compel the Court to **GRANT** Petitioner's request for preliminary injunctive relief: Respondent is enjoined from removing or permitting L.D.M. to be

1

removed from those counties constituting the Statesboro Division of the Southern District of Georgia's jurisdictional bounds, which include the counties of Bulloch, Candler, Emanuel, Evans, Jenkins, Screven, Tattnall, and Toombs. The injunction does not restrain Respondent himself from leaving the counties of the Statesboro Division. This injunction shall remain in effect until the Petitioner's Hague Convention Petition is resolved.

This Order is not a decision on the merits. Instead, the Court addresses only the precise concern Petitioner has presented: whether there should be some safeguard in place to prevent Respondent from removing L.D.M. from this Court's jurisdiction until the Court can consider the merits of Petitioner's Hague Convention Petition. This Court cannot issue an injunction unless Petitioner shows "that [she] is likely to suffer irreparable harm in the absence of preliminary relief." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). As discussed below, Petitioner has made that showing.

## PROCEDURAL BACKGROUND

Petitioner filed a "Petition Under the Hague Convention Seeking Return of the Child to Petitioner in Mexico" on April 16, 2015. Dkt. no. 1. On April 20, Petitioner filed a Motion seeking both an *ex parte* temporary restraining order and preliminary injunctive relief enjoining Respondent from removing

L.D.M. from this Court's jurisdiction. Dkt. no. 4. On April 24, 2015, the Court held an *ex parte* hearing on Petitioner's Motion for an *Ex Parte* Restraining Order. The Court granted Petitioner's request for a temporary restraining order, and enjoined Respondent from removing L.D.M. from the Southern District of Georgia, Statesboro Division's jurisdiction until the Court heard all parties at a full hearing on Petitioner's motion for preliminary injunctive relief. Dkt. no. 24. The Court scheduled that hearing for May 6, 2015. Id.

A few days before the May 6, 2015 hearing, Petitioner discovered that she would not be able to obtain a visa or other formal permission to enter the United States to testify in any hearings related to her request for a preliminary injunction or her Hague Convention petition. On May 1, 2015, she moved to appear at the May 6, 2015 hearing by videoconference from Mexico. Dkt. no. 18. Respondent did not oppose or otherwise respond to Petitioner's motion—perhaps because of the short amount of time between the motion and the hearing, which could not be rescheduled or delayed because the temporary restraining order was due to expire. See id. The Court provisionally granted Petitioner's motion to testify by videoconference, noting that Respondent would be given the opportunity to oppose Petitioner's remote testimony before it was heard. Dkt. no. 20. The Court

AO 72A
(Rev. 8/82)

also directed Petitioner to supplement the record with affidavits showing that certain logistical and procedural safeguards would ensure Petitioner's uninterrupted and adequately sworn testimony, which she has provided. See Dkt. no. 21.

**PETITIONER'S TESTIMONY BY VIDEOCONFERENCE**

Per the Court's May 5, 2015 Order provisionally granting Petitioner's motion to attend the May 6, 2015 hearing by videoconference (Dkt. no. 20), Respondent had the opportunity to orally oppose Petitioner's remote testimony at that hearing. Respondent did not oppose Petitioner's remote testimony, which the Court then permitted pursuant to Federal Rule of Civil Procedure 43(a) and as further outlined in the Court's prior Order on that matter (Dkt. no. 20).

**FINDINGS OF FACT**

The Court notes that many of the facts discussed below were previously outlined in the Court's April 24 Order granting Petitioner's request for a temporary restraining order. See Dkt. no. 13. These facts are nevertheless recounted here because the Court is considering Petitioner's motion for a preliminary injunction anew, and those facts are further supplemented by Petitioner's remote testimony and Respondent's live testimony at the May 6, 2015 hearing.

AO 72A
(Rev. 8/82)

1. Petitioner is L.D.M.'s mother, and Respondent is his father. Dkt. no. 1 ("Petition"), ¶ 7.

2. Petitioner and Respondent are both citizens of Mexico. Id. ¶ 8.

3. Petitioner and Respondent were married in Oaxaca, Mexico, and are still married. Id. ¶ 9; Dkt. no. 1-3 (Marriage Certificate).

4. In addition to L.D.M., Petitioner and Respondent have two other children, both of whom reside with Petitioner in Mexico. Petition ¶ 10.

5. Petitioner and Respondent moved to the United States from Mexico in 2004, along with their oldest child. Id. ¶¶ 11-13.

6. Petitioner gave birth to L.D.M. in Statesboro, Georgia, on October 15, 2006. Id. ¶ 14; Dkt. no. 1-4 (Birth Certificate).

7. In May 2010, Petitioner and Respondent agreed that Petitioner would return to Mexico with L.D.M. On May 26, 2010, Respondent signed a notarized statement acknowledging Petitioner's return to Mexico with L.D.M. Petition ¶ 16; Dkt. no. 1-5 (notarized agreement bearing Respondent's signature).

8. In June 2010, Petitioner, L.D.M., and one of her other two children went to Mexico. At the preliminary injunction

AO 72A
(Rev. 8/82)

hearing, Petitioner testified that her third child had already returned to Mexico before the rest of the family. Respondent stayed in the United States, having promised to send money to his family and to return to Mexico within one year. Petition ¶ 17.

9. Respondent never returned to Mexico, and stopped contacting Petitioner or sending any financial support soon after Petitioner and her children arrived in Mexico. Id. ¶¶ 18, 20.

10. From June 9, 2010 until March 15, 2014, L.D.M.'s permanent residence was with Petitioner in Mexico. During this time, Petitioner provided financial and other support for L.D.M. Id. ¶¶ 19, 21. At the hearing, Petitioner testified that once during this time period L.D.M. visited Respondent for about six months.

11. In February 2014, Respondent contacted Petitioner and asked that L.D.M. visit him again in the United States. Petitioner agreed to let L.D.M. visit his father. Id. ¶¶ 23-24.

12. At that time, L.D.M. was continuously enrolled in a primary school in Mexico. Id. ¶ 25.

13. On March 15, 2014, L.D.M. flew from Mexico to the United States. Id. ¶ 26.

6

14. In April 2014, Respondent asked Petitioner if L.D.M. could stay with him in the United States until the end of the school year. Petitioner agreed. Id. ¶ 27.

15. In June 2014, Petitioner asked Respondent to return L.D.M. to Mexico so that L.D.M. could begin his next school term. Respondent refused to return L.D.M. to Mexico. Id. ¶¶ 29-30.

16. Petitioner believes that Respondent's girlfriend or sister cares for L.D.M. during the week while Respondent travels for work. Id. ¶ 34.

17. Despite repeated requests to have L.D.M. returned to Mexico, Respondent has not returned L.D.M. to Mexico. Id. ¶ 31.

18. Petitioner says that she can only communicate with L.D.M. at Respondent's pleasure, and she has thus had limited communication with her child.

19. On October 13, 2014, Petitioner filed a Petition under the Hague Convention for the return of L.D.M. with the Secretaria de Relaciones Exteriores, in Mexico. Id. ¶ 33; Dkt. no. 1-11 (Copy of the Petition).

20. Petitioner believes that L.D.M. is currently residing under the care of Respondent, his girlfriend, or his sister in Statesboro, Georgia.

7

AO 72A
(Rev. 8/82)

21. Petitioner believes that Respondent is not a citizen of the United States and is not lawfully present in the United States.

22. Petitioner filed the present Petition in the United States District Court for the Southern District of Georgia on April 16, 2015. Id.

23. At the preliminary injunction hearing, Petitioner's testimony confirmed and supplemented the allegations in her Petition and Declaration as outlined above. Furthermore, Petitioner testified that there was no written custody agreement between her and Respondent. When asked if there was any understanding between her and Respondent as to who would have custody of the children, Petitioner referenced the notarized statement Respondent signed in 2010 giving his consent for Petitioner to take the children to Mexico. See Dkt. no. 1-5.

24. Respondent also testified at the preliminary injunction hearing. While the factual basis for Petitioner's fear that Respondent would flee the Court's jurisdiction with L.D.M.—namely, that he was considering a job opportunity in Seattle, Washington—had previously only been proffered by Petitioner's counsel, Respondent confirmed that he was considering a move to Seattle but had put those plans on hold until the Hague Convention Petition was resolved. The rest of

AO 72A
(Rev. 8/82)

Respondent's testimony supplemented, but did not contradict, Petitioner's allegations. He testified that L.D.M. is now eight years old and is enrolled in second grade at a school in Statesboro, Georgia. Respondent also confirmed that when he travels for work, his sister cares for L.D.M. Respondent would like L.D.M. to stay in the United States because he believes the schools are better, the community is safer, and L.D.M. would have better opportunities in the United States than he would in Mexico.

**CONCLUSIONS OF LAW**

1. "A preliminary injunction is an extraordinary remedy never awarded as of right. In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." Winter, 555 U.S. at 22.

2. A plaintiff seeking a preliminary injunction must make four showings: "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Id. at 20.

3. The plaintiff must clearly meet the burden of persuasion on these four issues. Four Seasons Hotels & Resorts,

9

B.V. v. Consorcio Barr, S.A., 320 F.3d 1205, 1210 (11th Cir. 2003); accord Winter, 555 U.S. at 22.

4. When a court issues an injunction, the court's order must "state its terms specifically" and must "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1); accord Schmidt v. Lessard, 414 U.S. 473, 475-77 (1974); Planetary Motion, Inc. v. Techsplosion, Inc., 261 F.3d 1188, 1203 (11th Cir. 2001).

## I. Likelihood of Success on the Merits

5. Petitioner has brought a Petition for the return of L.D.M. to Mexico pursuant to the Hague Convention and the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. § 9001 et seq. See Petition.

6. In order to demonstrate that she is likely to prevail on the merits, Petitioner must show a *substantial* likelihood of success on the merits. Cable Holdings of Battlefield, Inc. v. Cooke, 764 F.2d 1466, 1474 (11th Cir. 1985) (emphasis added).

7. The United States is a member-party to the Hague Convention, which seeks "(a) to secure the prompt return of children wrongfully removed or retained in any Contracting State; and (b) to ensure that rights of custody and of access under the law of one Contracting State are effectively respected

10

in the other Contracting States." Hague Convention, Art. 1 (available at Dkt. no. 1-2). In the United States, the Hague Convention is implemented by ICARA. 22 U.S.C. § 9001 et seq.

8. This Court has jurisdiction to consider Petitioner's Petition under § 9003 of ICARA, which provides that the "courts of the States and the United States district courts shall have concurrent original jurisdiction of actions arising under the Convention," and that petitions for relief may be filed "in any court which has jurisdiction of such action and which is authorized to exercise its jurisdiction in the place where the child is located at the time the petition is filed." 22 U.S.C. § 9003(a) and (b).

9. Petitioner has the burden of showing by a preponderance of the evidence "that the child has been wrongfully removed or retained within the meaning of the Convention." 22 U.S.C. § 9003(e)(1)(A).

10. Under Article 3 of the Hague Convention,

> The removal or retention of a child is to be considered wrongful where (a) it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and (b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

11

The rights of custody mentioned in sub-paragraph (a) above, may arise in particular by operation of law or by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of that State.

Hague Convention, Art. 3.

11. A court "[i]n furtherance of the objectives of . . . the Convention . . . may take or cause to be taken measures under Federal or State law, as appropriate, to protect the well-being of the child involved or to prevent the further removal or concealment before the final disposition of the petition." 22 U.S.C. § 9004(a).

12. The Eleventh Circuit Court of Appeals has summarized the Hague Convention's return remedy as follows:

> [T]he Hague Convention provides that the removal or retention of a child from his or her State of habitual residence is wrongful if the petitioner establishes by a preponderance of the evidence that: (1) the child has been removed or retained in violation of the petitioner's "rights of custody," i.e., "rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence," either jointly or alone; and (2) "at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention." . . . Once the petitioner satisfies this burden, the child must be returned to her State of habitual residence unless the respondent establishes one of these affirmative defenses: (1) that the petition for return was filed more than one year from the removal or retention and the child is well-settled in her new environment, or (2) that the petitioner "was not actually exercising the custody rights at the time of the removal or retention, or had consented to

12

or subsequently acquiesced in the removal or retention."

Furnes v. Reeves, 362 F.3d 702, 712 (11th Cir. 2004) <u>abrogated on other grounds by</u> Lozano v. Montoya Alvarez, 134 S. Ct. 1224 (2014).

13. Petitioner has shown that she had custody rights over L.D.M., and was exercising those rights at the time of his retention in Statesboro. Save for one prior visit to his father, L.D.M. had resided continuously with Petitioner and his siblings in Mexico from June 9, 2010 until March 15, 2014 (Petition ¶ 19), and Petitioner has provided L.D.M.'s financial support for most or all of his life (¶¶ 20, 21).

14. Petitioner has also shown through her Complaint that Respondent has retained L.D.M. in Statesboro in violation of Petitioner's custody rights by first agreeing to keep L.D.M. only until the end of the 2014 school year (¶ 27), but then refusing to return L.D.M. to Mexico after the school year had ended (¶¶ 29-32).

15. While Respondent's reasons for keeping L.D.M. in the United States are admirable, those reasons do not factor into the question of who is likely to succeed on Petitioner's Hague Convention Petition, which is determined by whether or not the child was "removed or retained in violation of the petitioner's 'rights of custody.'" Furnes, 362 F.3d at 712. At the

13

preliminary injunction hearing, Respondent did not offer any testimony undermining Petitioner's evidence or arguments as to her likely success on the merits of this limited question.

16. Because Petitioner has shown that she held and was exercising rights of custody over L.D.M. at the time he was wrongfully retained by Respondent in Statesboro, Georgia, Petitioner has shown that she will likely succeed on the merits of her Petition under the Hague Convention.

**II. Likelihood of Irreparable Harm**

17. Before the Court may issue a preliminary injunction, the Plaintiff must show that irreparable harm is not merely possible, but likely. Winter, 555 U.S. at 22 (rejecting "possibility" standard as too lenient and writing, "[o]ur frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is likely in the absence of an injunction." (emphasis in original)).

18. "An injury is 'irreparable' only if it cannot be undone through monetary remedies." United States v. Jenkins, 714 F. Supp. 2d 1213, 1221 (S.D. Ga. 2008) (citations omitted).

19. Here, Petitioner has alleged that Respondent, a citizen of Mexico, is not lawfully present in the United States.

20. Because Respondent is not lawfully residing in the United States, it is likely that an Order to appear in federal court for future hearings related to Petitioner's Hague Convention Petition will incentivize Respondent to flee the Court's jurisdiction with L.D.M.

21. If Respondent were to remove L.D.M. from the Court's jurisdiction, Petitioner would be denied her opportunity to seek L.D.M.'s return to Mexico under the Hague Convention. The likely harm to Petitioner, then, is exceedingly high, as she may not be able to continue a relationship with her son absent an injunction.

22. Respondent testified that he had entertained a possible move to Seattle, Washington before he was served with the Hague Convention Petition. While he agreed that L.D.M. should stay in Statesboro pending the resolution of the Petition, Respondent did not otherwise challenge Petitioner's arguments that she would likely suffer irreparable harm if the Court did not issue a preliminary injunction.

23. Therefore, Petitioner has shown that irreparable harm will likely ensue if the Court does not issue a preliminary injunction.

AO 72A
(Rev. 8/82)

### III. Balance of the Equities

24. When a District Court grants a preliminary injunction, it should weigh the equities carefully. Cursory analysis is insufficient. Winter, 555 U.S. at 26.

25. Several equitable considerations weigh in Petitioner's favor. Petitioner has certain custody rights over L.D.M. under the laws of Mexico. The provisions of the Hague Convention and the ICARA are the only legal recourse available to her under the present circumstances, where her son has allegedly been wrongfully retained in Statesboro, Georgia in violation of her custody rights. If Respondent were to remove L.D.M. from the Court's jurisdiction, Petitioner's only available recourse for the return of her son would be thwarted. The stakes for Petitioner, then, are high.

26. Very few equitable factors weigh in favor of disturbing the status quo. The requested injunction would not greatly inhibit Respondent's rights or ability to travel, as it is strictly tailored to keeping L.D.M. within this Court's jurisdiction for the pendency of Petitioner's Hague Convention petition. Furthermore, even if Respondent himself needed to leave the Court's jurisdiction pending the resolution of Petitioner's Hague Convention Petition, he would be able to do so by placing L.D.M. in the care of his sister, which is his

AO 72A
(Rev. 8/82)

current practice when he travels for work. Furthermore, Respondent testified that he intended to keep L.D.M. in the Statesboro area pending the resolution of the Petition, and had set aside his plans to move to Seattle, Washington because of the Petition. Thus, the requested injunction would present little, if any, inconvenience or harm to Respondent.

27. Upon weighing the above factors, the Court concludes that the balance of the equities favors Petitioner insofar as the Court considers her request for a preliminary injunction. The potential harm to Petitioner greatly exceeds any harm that could fall on Respondent in light of the injunction. The injunction will allow Petitioner to seek her legal remedies under the Hague Convention and ICARA with little or no inconvenience to Respondent.

**IV. Public Interest**

28. The relief requested is limited in nature and tailored toward one goal: allowing the Court to exercise its jurisdiction in considering Petitioner's Petition under the Hague Convention and ICARA.

29. The public has an interest in seeing the custody rights of parents residing in other nations enforced in the United States' courts through the Hague Convention and ICARA.

AO 72A
(Rev. 8/82)

30. The Court concludes that the public interest in granting a preliminary injunction order favors Petitioner.

**CONCLUSION**

Petitioner has met the requirements for a preliminary injunction enjoining Respondent from removing or allowing L.D.M. to be removed from the Southern District of Georgia pending the Court's consideration of Petitioner's Hague Convention Petition. Therefore, the Court **GRANTS** Petitioner's request for a preliminary injunction.

The Court hereby enjoins Respondent from removing or allowing L.D.M. to be removed from the geographic jurisdiction of the Statesboro Division of the Southern District of Georgia, which includes the counties of Bulloch, Candler, Emanuel, Evans, Jenkins, Screven, Tattnall, and Toombs. The injunction does not restrain Respondent himself from leaving the counties of the Statesboro Division. This injunction shall remain in effect until the Court reaches a decision on Petitioner's Hague Convention Petition.

This order binds all of the parties, the parties' officers, agents, servants, employees, and attorneys.

Pursuant to Federal Rule of Civil Procedure 65(c), the Petitioner must post bond with the Clerk of the U.S. District Court in the amount of $5,000 by May 11, 2015.

AO 72A
(Rev. 8/82)

**SO ORDERED**, this 7TH day of May, 2015 in Statesboro, Georgia at 3:00 p.m.

_____
LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)